Lee, J.
This is a contest between persons claiming to be creditors of a common debtor, and seeking priority out of the proceeds of his effects, which have proved inadequate to the satisfaction of all.
The suit of the appellee was what is called “ a foreign attachment,” commenced by a subpoena sued out on the 12th of October 1846, with the usual endorsemant to attach the effects of the absent debtor in the hands of the home defendants, and to restrain the latter from disposing of them till the further order of the court. It was made returnable to the November rules following ; and upon the day on which it issued, it was executed upon the defendant Snodgrass, who had in his possession a stock of goods and other effects belonging to the debtor Joseph W. Holt. After the service of this process, that is to say, on and after the 17th day of October 1846, the appellants and other creditors of the said Joseph Holt sued out their several attachments at law, and the same were levied upon the same property.
At the November term of the county court of Botetourt, these creditors obtained judgments upon their respective attachments, with orders for the sale of the attached effects; and thereupon the appellee, who had filed his bill at the November rules, filed a supplemental bill, setting out the proceedings of these creditors, alleging that they were about to proceed to execute the orders of sale of the goods, and praying for an *286 injunction to restrain them from so doing, and that the goods might be applied to his benefit according to the prayer of the original bill. The appellants and others of the attaching creditors filed their answers, contesting the appellee’s right to recover according to the pretensions of his bill, and claiming priority for themselves out of the attached effects. Subsequently the goods were sold by an agent agreed upon by the parties, and the proceeds brought into court; and there having been a reference and a report under an interlocutory order made in the cause, on the 9th of September 1848, the cause was heard, and a decree pronounced sustaining the right of the appellee to recover according to his pretensions, and also awarding to him priority out of the proceeds of the attached effects; and the injunction which had been granted to restrain the creditors who had taken attachments at law, was accordingly perpetuated, and the receiver who held the fund was directed to pay over the same to the complainant, and the attaching creditors to pay the costs of the supplemental bill. From this decree the defendants Moore, Brugh and Smith, applied for and obtained an appeal to this court.
The first question presented in this case is as to the regularity of the proceeding by injunction at the suit of the creditor in a foreign attachment to restrain creditors who have attached the same effects by proceedings at law, from appropriating them to their use. This question is however sufficiently answered by the case of Erskine v. Staley, 12 Leigh 406, in which it is distinctly held that an application to the court of chancery to enjoin a sale in such a case under the judgment at law is entirely regular and proper; and the judge who delivered the opinion in the case states that it is the only remedy the plaintiff in the foreign attachment could resort to.
It is objected on the part of the appellants, that the *287 appellee’s attachment was issued irregularly, and was void because no such affidavit of the nonresidence of the debtor as is required by the statute, had been made and filed before the subpoena with the endorsement of attachment issued. It has never been the practice, so far as I have been able to learn, to file an affidavit of nonresidence with the clerk, in order to authorize him to issue the subpoena and to make such an endorsement in the nature of an attachment thereon as the plaintiff’s counsel may direct. According to the long established usage of the state, such an endorsement without a previous affidavit, serves as a notice to the home defendant not to part with the effects of the debtor in his hands without leave of the court, and when served upon the home defendant, creates a lien in favor of the creditor, of which neither the absent debtor nor the garnishee, by any act of theirs, nor any third person, by any attachment or other process of law subsequently levied, could deprive him. This practice has been repeatedly recognized as regular, both by the chancery courts and the Court of appeals. Smith v. Jenny, 4 Hen. & Munf. 440; McKim v. Fulton, 6 Call 106; Williamson v. Bowie, 6 Munf. 176; Erskine v. Staley, 12 Leigh 406. An endorsement in the nature of an attachment has not, it is true, been construed to authorize the officer serving it, to take the effects out of the hands of the garnishee, or to require him to give security to have them forthcoming; nor does it operate as an injunction so as to subject a party to the penalty of a contempt for disobedience. If the plaintiff desire such a formal order of the court as will serve these purposes, he must file the affidavit according to the terms of the act; but for the purpose of a notice to the garnishee and to secure a lien upon the property, a subpoena with an endorsement in the nature of an attachment, comes in place of the formal order of the court, and had indeed superseded *288 it in practice, and rendered it unnecessary as early as Smith v. Jenny, decided in 1809. The act certainly does not require the affidavit to be filed before the subpoena can issue, and I am aware of no case from which any inference can be fairly made to require it. The case of Brian v. Pittman, 12 Leigh 379, referred to by the counsel, does not so decide. The court in that case held that it was error in the court below to proceed to decree against absentees without an affidavit of nonresidence, or that upon enquiry at their usual places of abode, they could not be found. Nothing is intimated of any necessity to file this affidavit before the subpoena issues; and it is expressly held that the answer of a defendant admitting that he was a nonresident would render any affidavit unnecessary. I think the objection cannot be sustained.
The next objection is, that the attachment was void for uncertainty, because neither the character nor the amount of the claims for which the attachment is sued out is stated in the endorsement on the subpoena. The endorsement however is of course to be understood as referring to the bill to be filed, in which the nature and amount of the complainant’s demands must be properly exhibited. It is argued, however, that a plaintiff, after issuing his subpoena with an endorsement in general terms, and after it had been served, might purchase up other claims against the debtor, and include them in his bill, and thus practice a fraud upon other creditors who had acquired rights after his attachment had been served on the garnishee, but before his purchase of such additional claims. The answer to this is that the court cannot presume such a fraud, and must refer the ownership of the claims set up in the bill filed to the time of the suing out of the subpoena, in the absence of proof or suggestion to the contrary; but that it is entirely competent to any party interested to set up such a case, in some proper manner, in defence of his *289 rights; and upon its being made out, the court will restrict the operation of the attachment to the subject which it properly embraces, and not suffer it to be used to defraud those who may have acquired rights after its emanation.
The next objection is, that the proof in the ease was not sufficient to show that the defendant Joseph W. Holt was a nonresident of the commonwealth at the time the suit was instituted. The bill alleges that at the time of the emanation of the subpoena, the said Joseph Holt “was and still is a nonresident of the commonwealth of Virginia, and that upon enquiry at his usual place of abode, he could not be found, so as to be served with process.” The preamble of the statute, 1 Rev. Code 1819, p. 474, ch. 123, recites, that whereas creditors had experienced great difficulties in the recovery of debts due from persons residing out of the jurisdiction of this commonwealth, &c., and then goes on to provide that where any suit had been or thereafter should be commenced for relief, against any defendants who are out of this country, and others within the same, having effects in their hands, &c., upon affidavit that such defendant or defendants are out of the country, or that upon enquiry at his, her or their usual place of abode, he, she or they could not be found, so as to be served with process, the court may make proper orders to secure the attached effects, and appoint a day in the succeeding term for the appearance of such defendants, &c., a copy of the order fixing such day to be published as thereby provided. How it might be held, upon an equitable construction of this statute, that where a debtor has actually left his usual place of abode and set off for a distant state, with the intention not to return to his residence, but in future to reside out of the state, an attachment sued out after his departure might be sustained, although it chanced he had *290 not actually passed the state line at the time the suhpoma issued. But however this may be, I think it may be very fairly and sufficiently inferred from the evidence that on the 12th of October 1846, the defendant Joseph Holt was out of the state, and that he had left it without the animus revertandi, but with a formed purpose to take up his residence in another state. It appears that he was a merchant doing business in Botetourt county; that he was not successful in business, or at all events that he was much involved and embarrassed by his debts; that he left home on the 15th of September 1846, under such circumstances as induced a witness, who professes to have noticed them, to believe that his intention wras not to return, though the ostensible purpose for which he went away was to purchase goods. After his departure, the first that appears to be heard of him is from Beverly in the county of Randolph, (west of the mountains,) and on the route to the Ohio river. From that place he writes a letter to the witness, who appears to have been a confidential friend, dated the 1st of October 1846, in which he avows his purpose not to return, though he intimates that such was not his purpose when he left home. He speaks of his debts, gives some directions about winding up his business, and paying them as far as possible, and speaks of his future prospectó in business. He intimates that appearances were against him, and that he had no doubt he would be looked upon about Amsterdam (his former residence) as a “ confirmed rascal,” but hopes to prove to the contrary, in the future. A short time after this he is heard from in Indiana, through a letter addressed by him to the same witness, in which he states that he had been in Cincinnati, had there purchased a stock of goods, and was then selling them in Indiana. How as he was in Beverly on the 1st of October, a place which we know *291 judicially, is but three or four days’ easy journey at the very utmost, from the Ohio river, upon which he could have a speedy passage to Cincinnati, where he appears to have been, and a short time after he was in Beverly, was in Indiana selling a stock of goods which he had in the mean time purchased in Cincinnati, in the absence of evidence of any detention or delay in Virginia, I think it may be reasonably inferred that a,s early as the 12th of October he had passed out of the state, of Virginia, and that he had left the state without the intention to return; and as the moment he left it with the intention to take up his future residence elsewhere, he ceased to be a resident of this state, I regard the allegation of nonresidence as sufficiently proved in the cause.
The next objection is, that there is no proof in the record to show that the order of publication against the alleged absent defendant had been duly executed as the law requires. The decree, however, states that the order of publication against Joseph Holt had been duly published, and as due publication requires both the insertion of the order in a newspaper for the prescribed period, and the posting of it at the court-house door in due time, the decree must be construed to import that both were done. And it has been decided by this court on several occasions, that where the decree states that publication had been made, it will be sufficient, and this court will not look into the record for the evidence of the fact. Hunter's ex'or v. Spotswood, 1 Wash. 145; Gibson v. White, 3 Munf. 94; Craig v. Sebrell, 9 Gratt. 131. I think this objection also should be overruled.
The fifth ground of error assigned by the appellants is, that there was no such relation subsisting between Joseph Holt and the appellee as would entitle the latter to maintain an attachment against him : That *292 the appellant was at most but a guarantor or security for debts of Joseph Holt not yet paid, and not such a creditor as this remedy was provided for by the statute to enable him to recover a debt due. I do not think, however, that the remedy intended to be provided by this statute is of so restricted a character as this assignment of error and the argument of the appellant’s counsel would seem to suppose. For although, in the case of Wilson v. Koontz, 7 Cranch R. 202, it is said that although the proceeding is in chancery, yet the matter is a case at law between the parties, the remark was obviously intended to be applied to that particular case, which was a simple attachment in chancery to recover the amount of a note which must have been recovered by a suit at law if the defendant had not been a nonresident. But there is no donbt that purely equitable rights may be secured and enforced through the medium of the foreign attachment.
The fifth section of the statute, 1 Rev. Code 1819, p. 476, plainly extends the provisions in relation to “ absent debtors” proper, to all cases of suits in chancery against any absent defendants, concerning any matter or thing whatever; and in the case of Templeman v. Fauntleroy, 3 Rand. 434, we see that purely equitable claims as well as legal demands may be made the subject of foreign attachment: And we are told that “ where the case properly belongs to the court of equity, all equitable rules and principles will attach to it.” Carr, J., p. 441. How it cannot be doubted that the claim of a party standing in the condition of a guarantor or surety, to protect himself against loss by reason of the failure of the principal debtor, is such an equitable right as may be enforced through the medium of a foreign attachment. If the debt be due, and the principal debtor can be served with process, the right of the surety to maintain a bill *293 quia timet proper, is undeniable. If tbe principal debtor, however, be out of the commonwealth, then the attachment comes in place of the service of process upon him. And if the debt be not due, a court of equity, upon familiar principles analogous to those of the bill quia timet proper, can have no difficulty in protecting a surety against loss by reason of the absence of the debtor from the commonwealth. But I regard this as a matter which is settled by the case of Williamson v. Bowie, 6 Munf. 176. In that case the court sustained an attachment in chancery against a nonresident maker of a note, to indemnify and relieve an endorser, who, in reference to the holder, stood as a mere surety for the debt. And there can be no substantial, difference between the case of an endorser in such a case and ‘a surety or guarantor, such as is the appellee in this case. Both are in effect but sureties for a debt properly due from another.
The same principle is deducible from the case of McKim v. Fulton, 6 Call. 106, though the report of the case is somewhat obscure. The bill was filed on behalf of one partner of a mercantile concern which had been dissolved, to attach the effects of the other partner who was a nonresident, and to have them so applied as to exonerate the plaintiff from liability for the debts of the firm which the nonresident partner, upon the dissolution of the firm, had taken upon himself to pay. 2sTow as the nonresident partner had agreed to pay the debts of the firm and to save the other harmless, as between themselves, the former became the principal debtor, and the latter the surety merely; Buchanan v. Clark, supra; and although the plaintiff had not been made liable for any of the debts of the firm, so far as it appeared, yet the attachment to secure him against his contingent liability was sustained by the Court of appeals, although it had been *294 discharged by the chancellor. In the case of Williamson v. Bowie, above cited, the promissory note which the plaintiff had endorsed and against which he sought indemnity, had not been paid, and had not become payable when the attachment was taken out. Yet that was deemed no objection to granting the relief prayed for. In this case all the debts against which the appellee was held entitled to protect himself by his attachment, had become due and payable before the attachment was issued, and in this respect the casé is stronger than Williamson v. Bowie.
But it is insisted that the appellee was not in fact a surety for Joseph Holt; that the letter of credit on the faith of which it was said the goods were furnished, was no guaranty but a mere letter of introduction or recommendation, upon which the appellee could not have been liable in a court of law; and at all events, that he could not have been made liable unless notice had been given him that his guaranty was accepted, and of the amount of goods furnished upon it. A guaranty is a collateral engagement or undertaking to be responsible for the debt of another upon his failure to perform his engagement. The language used must express in a clear and explicit manner, an intention on the part of the guarantor to make good the engagement of the principal in case of his default. Russell v. Clark, 7 Cranch. 69, 90, 91. But as a guaranty is regarded as a mercantile instrument, it is not to be interpreted by any strict technical rules of construction, but by what may be fairly presumed to have been the intention and understanding of the parties. Douglass v. Reynolds, 7 Peters’ R. 113; Lee v. Dick, 10 Peters’ R. 482; Bell v. Bruen, 1 How. S. C. R. 169. In this case the appellee, a merchant doing business in the country, writes to a mercantile house in Richmond with which he was in the habit of dealing, stating that *295 his brother was going to Richmond to purchase goods, and as he was unacquainted there, the writer requests his correspondents to introduce him to some of the houses at which he (the writer) dealt; “ with assurance that any contract of his will and shall be promptly paid.” Now I think there could scarcely be a more unambiguous, clear and explicit expression of intention on the part of the writer to assume the liability of a surety upon the default of the principal, and those to whom the letter might be shown could not understand it in any other sense.' It is not at all like the letters in the case of Russell v. Clark, referred to by the counsel. In those letters, as the chief justice states in delivering his opinion, while there were to be found expressions alluding to that reciprocity of benefits which results from the intercourse of merchants with each other, there was no intimation of any intention on the part of the writers to become answerable for the parties introduced. They were simply letters of introduction and recommendation, such as are usual among merchants, manifesting the friendship of the writers for the parties introduced, and their solicitude that the party to whom they were addressed should aid their operations so far as his own view of his interests would induce him to engage in the transactions of a house of high character and having the particular good wishes of the writers.
I think the letter in this case might properly have been regarded by those to whom it was shown as the guaranty of the appellee for such sales as they might make to Joseph Holt upon the faith of it; and no question can be raised as to consideration, as it is well settled that it is not necessary there should be a consideration directly between the persons giving and receiving the guaranty. It is sufficient if the party for whom the guarantor becomes surety receives a benefit, or the party to whom the guaranty is given suffer a *296 loss, as an inducement to the surety to become the guarantor. Morley v. Boothby, 3 Bing. R. 107, 11 Eng. C. L. R. 53; Burn v. Guy, 4 East’s R. 190; Willatts v. Kennedy, 8 Bing. R. 10, 21 Eng. C. L. R. 200.
As to the questions whether the guaranty was accepted, and whether due notice of such acceptance and of the advances made upon it, and of the default of Joseph Holt, was given to the appellee, I have to say that however they might have been determined in an original action at law against the appellee by a party who had made the advances, yet that they cannot now be raised in this case in a manner to be at all available to the appellants, except in connection with the allegation of fraud and collusion between the Richmond merchants and the appellee. But this allegation is, I think, wholly unsustained by the proofs. Indeed the only circumstance of the appellee’s having the claims of the Richmond merchants in his possession and the suing out attachments in their names, which tends to raise even a suspicion of the fairness of the transaction, is, I think, satisfactorily accounted for. Those claims were no doubt sent to the appellee with authority to use the names of the creditors, if necessary to enable the appellee to secure himself from loss on account of his liability for them; and the attachments were sued out after this suit was brought, out of abundant caution, for the purpose of securing the appellee so far as they might serve that purpose, in case it turned out that lie could not maintain his foreign attachment.
Laying aside then the charge of fraud and collusion, I think the circumstances of this case .are such as to constitute a waiver on the part of the appellee, of all the questions above suggested, and a distinct recognition of his liability. It is clear, as I think, that the goods were sold by the Richmond merchants to Joseph *297 Holt upon the credit of the appellee’s guaranty. There was a strong moral obligation on the part of the latter to pay the debts if Joseph Holt failed to do so, even if the creditors had lost their legal right to recover against him by failure to give such notices as might have been required. It is clear from Joseph Holt’s letter to Snodgrass, that he regarded his brother as not only morally but legally bound for these debts, and that he believed his brother so considered himself. And in his original bill, the appellee distinctly admits both a moral and legal obligation on his part to pay them. This bill, it is true, was not filed until the November rules, which, though the earliest possible period at which it could have been filed, was yet after the appellants had sued out their attachments; but as the Richmond creditors, whose debts had been guarantied, were named as parties defendants in the subpoena of attachment sued out on the 12th of October, before any of the attachments at law had issued, and as they could not have been made defendants for any conceivable purpose except to enable the appellee to maintain his attachment by virtue of his liability for the debts due them, I think the bill on this point should relate back to the issuing of the subjmia, and may properly be referred to. as the fair exponent of his relation to those creditors, as understood by himself, at that time.
Both Pry and Company and Kent and Company claim in their answers that after Joseph Holt went away, but before the appellee sued out his attachment, the latter admitted his liability to them, and assumed the payment of the debts due them from Joseph, respectively. And the circumstance of their claims, as well as that of Willingham, having been sent by them to the appellee or his counsel, to be used for his benefit, and the acts and conduct of the appellee, all *298 concur to confirm the statements of the bill, and disclose a clear recognition of his liability when he brought his suit.
Another objection which has been taken is, that it is not proven the letter of guaranty was written at the time it bears date, nor that the Richmond merchants trusted Joseph Holt on the faith of it. But the letter was delivered to Fry & Co., and was produced and exhibited by them with their answer. If it had been fraudulently antedated, it was for the appellants to show it. They have offered no proof of any such antedating ; the circumstances of the case do not render it at all probable, and the court cannot presume it. And as to its effect in giving credit to Joseph Holt, the answers of the parties before referred to state explicitly that they sold their goods upon the faith of the letter, and would not have sold them without it. The letter is dated at Big Lick in Botetourt county on the. 18th of March 1846; it is delivered to Fry & Co., and in five or six days afterwards, these merchants in Richmond let him have goods amounting altogether to upwards of two thousand dollars, and he a stranger to them all and having no other introduction excepting this letter with a memorandum which appears to have been written at the foot of it and signed by one Edward Carter, in which he stated that he considered that goods sold on time to Joseph Holt, to the amount of fifteen hundred dollars, would be paid for by him. Ho one can doubt, I think, that the parties, in making these sales to Joseph Holt, did rely upon the guaranty of the appellee with whom they were acquainted, and who had been a dealer with them himself.
The last ground of error assigned is, that the suit should have been in the names of the appellee and Carter, and not of the appellee alone. But it may be a question whether Carter’s memorandum is any gua *299 ranty at all; and if it could be so construed, it is wholly separate and distinct from that of the appellee, though on the same paper, and he was liable, severally, if at all, upon it. And if he could have been made a party in this cause, yet he certainly is not so necessary a party that the decree should be disturbed because he is omitted.
None of the errors assigned is, as I think, a sufficient ground for reversing the decree; nor have I been able to discover any such in any part of it; and I am of opinion that it should be affirmed.
The other judges concurred in the opinion of Lee, J-
Decree affirmed-